UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ANTIOCH COMPANY LITIGATION | : | Case No. 3:09-cv-00445 |
| TRUST, W. TIMOTHY MILLER, | : | Judge Timothy S. Black |
| TRUSTEE, | : | |
| | : | |
| Appellant, | : | |
| | : | |
| vs. | : | Bankr. No. 3:08-bk-35741 |
| | : | |
| LYNDA HARDMAN, *et al.*, | : | |
| | : | |
| Appellees. | : | |

**DECISION AND ENTRY: (1) AFFIRMING THE ORDER OF THE
BANKRUPTCY COURT (Docs. 1-65, 1-66) (2) DENYING APPELLEES' MOTION
TO STRIKE (Doc. 17); (3) GRANTING APPELLEES' MOTION FOR LEAVE
(Doc. 17); (4) DENYING APPELLANTS' REQUEST FOR SANCTIONS; AND
(5) CLOSING THIS CASE**

This case is an appeal from the United States Bankruptcy Court for the Southern

District of Ohio. Appellant, the Antioch Company Litigation Trust, W. Timothy Miller

Trustee (hereinafter "Appellant"), appeals the Bankruptcy Court's Decision Denying

Appellant's Motion to Enforce the Confirmation Order and Granting Appellees' Motion

to Abstain From A Decision. (Docs. 1-65, 1-66). This Court has jurisdiction to hear this

appeal pursuant to 28 U.S.C. § 158.

## I.    BACKGROUND

The Antioch Company ("Debtors") was founded in 1926 and engaged in the

business of selling scrap-booking supplies. (Doc. 1-8). The leadership of Debtors during

the time in question consisted significantly of Lee Morgan, and his daughter, Asha

Morgan Moran, who, over the span of years, served in various capacities as officers and

directors of Debtors. (*Id.*) Also of great significance, Morgan and Moran allegedly served as fiduciaries of Debtor's Employee Stock Ownership Plan ("ESOP").

Beginning in 1979, Debtors were partially owned by the ESOP, which gave employees shares of the company according to their seniority. (*Id.*) In 2003, however, Debtors entered into a transaction (the "2003 ESOP Transaction") that would eventually result in the Debtors being wholly owned by the ESOP. The 2003 ESOP Transaction, however, left Debtors in a difficult financial situation and eventually lead to Debtors filing voluntary petitions for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Ohio.

In January 2009, the Bankruptcy Court entered a Confirmation Order confirming Debtors' Second Amended Joint Prepacked Plan of Reorganization of Debtors ("Confirmation Order"). (Doc. 1-42, 1-43). Pursuant to the Confirmation Order, "Debtors and their Estates" retained certain claims against third-parties which the Plan termed "Litigation Claims and . . . Business Litigation Claims." (Doc. 1-42). According to the Confirmation Order and Plan, "[o]n the Effective Date,[1] the Debtors and their Estates shall cause the Litigation Claims to be contributed, transferred, and assigned to the Litigation Trust." (*Id.*)

The Litigation Trust was established so that certain unpaid creditors would have "the possibility of meaningful recoveries" and that ESOP Participants "would have some possibility of distributions on their equity interests" if and when the Trustee prevailed in asserting the Litigation Claims and collected on such judgments. (Doc. 5).

---

[1] The Effective Date was February 6, 2009.

The Plan defines Litigation Claims as "claims, rights of action, suits or proceedings by any Debtor or Estate, whether in law or in equity, whether known or unknown, that any Debtor or Estate may hold against any person . . . but excluding . . . all Business Litigation Claims." (*Id.*) Appellant contends that Litigation Claims include "any claims for breach of fiduciary duty, any claims arising with respect to the ESOP, or any other claims or causes of action assigned to the Litigation Trust." (*Id.*)

The Confirmation Order also stated that ESOP Participants retained certain claims. Specifically, the Confirmation Order provides that:

> [n]othing herein . . . is intended to effectuate a transfer of any ESOT Participant Claims to the Litigation Trust or to any third-party. Such ESOT Participant Claims shall survive the entry of this Confirmation Order and will remain the sole and exclusive property of each such Holder of an ESOT Allocated Stock Interest[.]
>
> * * *
>
> As used in this paragraph, "ESOT Participant Claims" means any and all claims, causes of action or rights of any Holder of an ESOT Allocated Stock Interest other than claims, causes of action or rights asserted derivatively by, through, or on behalf of the Debtors or their Estates.

(Doc. 1-42). In other words, any right the individual ESOP Participants possessed to assert derivative suits "by, through or on behalf of the Debtor[]" corporations were assets transferred or assigned to the Litigation Trust. However, the ESOP Participants retained all other claims as their "sole and exclusive property[.]" (*Id.*)

In March 2009, Bonnie Fish, Christopher Mino, Monica Lee Woosley, Lynda Hardman, all of whom were ESOP Participants, along with and Evolve Bank & Trust,

Trustee of the ESOP (Fish, Mino, Woosley, Hardman and Evolve Bank are collectively referred to herein as the "Fish Plaintiffs"), filed suit (the "Fish Litigation") in the United States District Court for the Northern District of Illinois ("Illinois District Court") on behalf of the ESOP, and against Greatbanc Trust Company (former Trustee of the ESOP at the time of the 2003 ESOP Transaction), Lee Morgan, Asha Morgan Moran and Chandra Attiken (collectively referred to as the "Fish Litigation Defendants"), alleging that the Fish Litigation Defendants breached fiduciary duties arising under ERISA and engaged in ERISA prohibited transactions. (Doc. 1-53).

In July 2009, Appellant filed a Motion in the United States Bankruptcy Court for the Southern District of Ohio purportedly seeking an order enforcing the Confirmation Order against the Fish Plaintiffs ("Motion to Enforce"). (*Id.*) Appellant argued that the claims asserted by the Fish Plaintiffs, while styled as ERISA claims, are in fact Litigation Claims that can only be pursued by the Litigation Trust. (*Id.*) The Motion to Enforce reaches this conclusion by arguing that Debtors, not the ESOP, were parties to the 2003 ESOP Transaction and because the Fish Plaintiffs pursue remedies allegedly not available under ERISA. (*Id.*) The Motion to Enforce requested an Order requiring that the Fish Plaintiffs "immediately dismiss the Fish Litigation, without prejudice, and to refrain from filing the same or similar claims in any other court." (*Id.*)

Following the filing of Appellant's Motion to Enforce, the Fish Litigation Defendants moved the Illinois District Court to hold the Fish Litigation "in abeyance until the United States Bankruptcy Court for the Southern District of Ohio issues its ruling on a

petition seeking enforcement of a Confirmation Order that would require the Plaintiffs to

dismiss this case." *Fish v. Greatbanc Trust Co.*, No. 09 C 1668, 2009 WL 2515116, *1

(N.D. Ill., Aug. 17, 2009).

In a Memorandum, the Illinois District Court stated that it "contemplates the likely

denial of the Motion to hold this action in abeyance" because, essentially, "more is

needed to justify what the trustee is seeking to do - and as indicated at the outset, that

justification should be made before this Court rather than being tendered solely to the

Bankruptcy Court in Ohio." *Id.* With regard to the Motion to Enforce pending in the

Bankruptcy Court, the District Court for the Northern District of Illinois stated that its:

> examination of the trustee's motion [filed in the United States Bankruptcy
> Court for the Southern District of Ohio] suggests that it is based on a false
> premise that the claims advanced in this action are "Litigation Claims"-a
> term of art under the definition quoted in his Motion ¶ 4 - that belonged by
> assignment to the Litigation Trust. But Litigation Claims are there defined
> as "all claims, rights of action, suits or proceedings by any Debtor or
> Estate" (emphasis added), while the claims advanced in this case assert
> rights of the ESOP and its beneficiaries, not of any of the Debtors
> themselves.

*Id.* at *2.

Following issuance of the Memorandum from the Illinois District Court, Appellees

filed a Motion with the Bankruptcy Court requesting that the Bankruptcy Court abstain

from ruling on Appellant's Motion to Enforce. (Doc. 1-61). Appellees' Motion also

requested that the Bankruptcy Court take judicial notice of the Memorandum issued by

the Illinois District Court. (*Id.*) Appellees argued that the issue presented in the Motion

to Enforce, *i.e.*, whether the claims asserted by the Fish Plaintiffs belonged to the

Litigation Trust, was conclusively determined by the Illinois District Court in its Memorandum, and that Appellant was now collaterally estopped from seeking the relief requested in the Motion to Enforce. (*Id.*)

On September 22, 2009, the Bankruptcy Court granted Appellee's Motion and abstained from deciding "whether the claims asserted by the Fish Plaintiffs belong exclusively to the Litigation Trust and Litigation Trustee, or whether the Fish Plaintiffs have independent claims relating to the ESOP[2] which they may pursue on their own in the District Court." ("Abstention Order") (Doc. 1-65). However, the Bankruptcy Court also stated that it was not abstaining from "any other aspect of its jurisdiction over the Antioch Chapter 11 cases, including the Litigation Trust," and specifically was not abstaining "from its jurisdiction to rule upon any litigation that may be filed with this court by the Litigation Trustee, including litigation related to the 2003 ESOP transaction."[3] (*Id.*)

In abstaining from deciding the Motion to Enforce, the Bankruptcy Court referenced intervention pursuant to Fed. R. Civ. P. 24 and stated that Appellant "may intervene in the Fish Litigation to assert his rights in that action to have issues raised by the Contested Matter determined in the District Court [in Illinois]." (*Id.*) The Bankruptcy

---

[2] As noted below and throughout this Decision, Appellant apparently concedes that ESOP Participants, including the Fish Plaintiffs, retained the ability to assert certain claims "following the entry of the Confirmation Order, which could include certain claims under ERISA." (Doc. 5). Therefore, the Bankruptcy Court actually abstained from determining whether the ESOP Participants have viable independent claims relating to the 2003 ESOP Transaction that they may pursue on their own.

[3] The Bankruptcy Court apparently contemplated Plaintiff's filing of suit to assert "Litigation Claims," which Plaintiff ultimately did in late 2009, following the Abstention Order. *See In re The Antioch Co.*, Adv. No. 09-ap-3409, 2010 WL 3440856 (Bkrtcy. S.D. Ohio May 26, 2010). The Bankruptcy Court's notation in this regard evidences its acknowledgment that a suit filed by Plaintiff asserting "Litigation Claims" would likely involve issues presented in this contested matter.

Court further cited the invitation to do so by the United States District Court for the Northern District of Illinois. (*Id.*) (*see also Fish*, 2009 WL 2515116 *1 (stating "[i]f trustee Miller believes that this Court should not be proceeding in a case properly before it, let him come into court here to present his position so that it may be fully considered by this Court")). With regard to collateral estoppel, the Bankruptcy Court declined to opine whether the Memorandum issued by the District Court for the Northern District of Illinois conclusively determined any issue presented by the Motion to Enforce. (Doc. 1-65).

Appellant filed a Notice of Appeal from the Bankruptcy Court's Abstention Order. (Doc. 1-67). Following the Court's denial of a Motion to Remand (Doc. 3), and following full briefing of this matter by the parties (Docs. 5, 15, 16), this appeal is now ripe for decision.

## II. STANDARD OF REVIEW

In reviewing appeals from bankruptcy courts, district courts are "bound by the bankruptcy court's findings of fact unless they are clearly erroneous." *In re Batie*, 995 F.2d 85, 88 (6th Cir. 1993) (citing Bankruptcy Rule 8013). Legal conclusions, however, are reviewed *de novo* by the district court. *Id.* "Under a de novo standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Maxus Capital Group, LLC v. Uhrich (In re Level Propane Gases, Inc.)*, No. 09-8047, 2010 WL 1255669 (6th Cir. BAP, Apr. 2, 2010) (citing *Palmer v. Washington Mutual Bank (In re Ritchie)*, 416 B.R. 638, 641 (6th Cir. BAP

2009); *General Elec. Credit Equities, Inc. v. Brice Rd. Devs., LLC (In re Brice Rd. Devs., LLC)*, 392 B.R. 274, 278 (6th Cir. BAP 2008)).

"The decision whether to abstain is within the sound discretion of the bankruptcy judge." *McDaniel v. ABN Amro Mortg. Group*, 364 F.R. 644, 650 (S.D. Ohio 2007) (citing *In the Matter of Tremaine*, 188 B.R. 380, 384 (Bankr. S.D. Ohio 1995)). Accordingly, this Court will review "the Bankruptcy Court's decision to permissively abstain under 28 U.S.C. § 1334(c)(1)" pursuant to an abuse of discretion standard. *Id.* Under this standard, the Bankruptcy Court's decision must be affirmed unless this Court "is left with the 'definite and firm conviction that the [bankruptcy] court . . . committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors' or 'where it improperly applies the law or uses an erroneous legal standard.'" *Id.*

### III. ANALYSIS

At the outset, it is necessary to determine the substance of Appellant's Motion to Enforce due to the somewhat unclear arguments advanced and statements made throughout the briefing of the matter here and in the Bankruptcy Court. Much of Appellant's arguments against abstention centers around the assertion that the Bankruptcy Court has exclusive jurisdiction over the issues presented in the Motion pursuant to 28 U.S.C. § 1334(e), which states that "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction . . . of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate[.]" Appellant made this argument in the Bankruptcy Court in response to the

Fish Plaintiffs' Abstention Motion. (Doc. 1-64).[4] However, the Bankruptcy Court never addressed § 1334(e) and never addressed whether it held exclusive jurisdiction over the issues presented in the Motion to Enforce.

The basic premise behind Appellant's argument is that the term "property" in § 1334(e) includes causes of action, and Appellant contends that this action requires a determination of whether the causes of action asserted in the Fish Litigation were owned by Debtors or their Estates. Because the determinations of property interests of Debtors and their Estates are allegedly involved, Appellant concludes that this matter falls within the exclusive jurisdiction of the Bankruptcy Court pursuant to § 1334(e).

In other words, Appellant characterizes this dispute as one in which it contends that the Fish Plaintiffs improperly assert state-law shareholder derivative claims in the Illinois District Court under the guise of ERISA claims.[5] Because state-law shareholder

---

[4] Before the Abstention Motion, however, Appellant stated that "[t]he Motion [to Enforce] does not question the jurisdiction of the District Court to hear the Fish Litigation." (Doc. 1-59).

[5] The distinction between pleading shareholder derivative actions and pleading ERISA plan participant actions was recently discussed by the Sixth Circuit. *Husvar v. Rapoport*, 430 F.3d 777, 782 (6th Cir. 2005). There, plaintiffs asserted that claims "question[ing] the propriety of certain business decisions made by the company's board of directors . . . [that] affected the value of the company stock that comprised the employees' benefit plan assets" were ERISA claims. *Id.* The Sixth Circuit concluded that such a complaint simply alleging "that the individual defendants *mismanaged the company* so as to result in a dramatic decrease in the value of . . . [company] stock - a result that, in turn, happened to devalue the ESOP funded with such stock" does not "implicate the protections afforded by ERISA." *Id.* (Emphasis added). The Sixth Circuit went on to imply that an ERISA action is not necessarily foreclosed, however, "[a]bsent any indication in the complaint that the plaintiffs intend to *challenge the decisions or actions of plan fiduciaries*, the filing contains no claims arising under federal [ERISA] law." *Id.* (Emphasis added). The conclusion in *Husvar* does not mean that ERISA claims can never be properly pled against a corporate officer or director who also serves in the capacity of an ERISA fiduciary. *See e.g. Eslava v. Gulf Tel. Co., Inc.*, 418 F.Supp.2d 1314, 1328-1329 (S.D. Ala. 2006) (finding that certain ERISA claims asserted against a defendant, who served in multiple capacities, including corporate officer, corporate director, and ERISA fiduciary, were not subject to dismissal where complaint adequately alleged that defendant acted "contrary to her fiduciary duties" under ERISA 29 U.S.C. § 1104(a)).

derivative claims would have to be asserted on behalf of Debtors,[6] such claims were the property of Debtors and their Estates that can now only be asserted by Appellant. However, the only substantive argument advanced by Appellant simply challenges the existence of ERISA claims based on the 2003 ESOP Transaction.  In other words, Appellant's true argument is not that the Debtors owned the claims asserted in the Fish Litigation, but, instead, that such ERISA claims, as asserted, have no merit or do not exist.

**A.     The Confirmation Order, The Plan of Reorganization, The Retention of Claims, Litigation Claims versus Purported ERISA Claims**

The parties appear to agree that Appellant now possesses the sole right to assert state-law shareholder derivative actions on behalf of the Debtors or their Estates by virtue of the Confirmation Order and Plan.[7]  Without necessarily deciding the issue, the Court acknowledges that the language of the Confirmation Order and Plan is consistent with the parties' apparent agreement in this regard.

---

[6]  In Ohio, "[a] shareholder's derivative action is brought by a shareholder in the name of the corporation to enforce a corporate claim." *Crosby v. Beam*, 47 Ohio St.3d 105, 548 N.E.2d 217, 219 (1989); *see also* 12 Ohio Jur.3d Business Relationships § 917 (stating that "[a]s a general proposition, actions for breach of fiduciary duties on the part of corporate directors or officers are to be brought in derivative suits . . . because the damage which results from the fraudulent or negligent management of the corporation is primarily damage to the corporation and to the corporate assets and it affects the stockholders only indirectly and all of them alike").

[7]  Even in the absence of the Confirmation Order and the Plan, it is questionable whether the Fish Plaintiffs would have standing to pursue shareholder derivative actions on behalf of the corporate Debtors. *See In re RNI Wind down Corp.*, 348 B.R. 286, 293 (2006) (stating that "[u]pon the filing of a bankruptcy petition . . . any claims for injury to the debtor from actionable wrongs committed by the debtor's officers and director become property of the estate under 11 U.S.C. § 541, and the right to bring a derivative action asserting such claims vests exclusively to the trustee"); *see also In re Mercedes Homes, Inc.*, 431 B.R. 869, 875-78 (S.D. Fla. 2009) (stating that shareholder derivative actions against corporate officers and directors in such capacity for breach of fiduciary duty are brought for the benefit of the corporation, and therefore, upon the corporation's filing of a bankruptcy petition, those claims become part of the debtor's estate as a matter of law, divesting individual shareholder of standing to pursue those claims).

-10-

The parties also appear to agree that the ESOP Participants did retain some causes of action following the effective date of the Confirmation Order and Plan. In fact, according to the Confirmation Order, ESOP Participants retained the right to assert "any and all claims, causes of action or rights" except for those that could have been "asserted derivatively by, through, or on behalf of the Debtors or their Estates." (Doc. 1-42). Appellant even admits in its Brief that the Fish Plaintiffs, as ESOP Participants, retained the ability to assert certain claims "following the entry of the Confirmation Order, which could include certain claims under ERISA." (Doc. 5).

Civil actions under ERISA "may be brought . . . by the Secretary, or a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title[.]" 29 U.S.C. § 1132(a)(2). Pursuant to § 1109:

> [a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good *to such plan* any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

(Emphasis added). As set forth specifically in § 1109, such ERISA actions are pursued on behalf of the ERISA plan.[8] *Pfahler v. Nat. Latex Prod. Co.*, 517 F.3d 816, 825 (6th

---

[8] Appellant asserted in the Reply in Support of the Motion to Enforce (Doc. 1-59) that, in some instances, employers may bring an action under ERISA for breach of fiduciary duties. (Doc. 1-59). Even if that assertion is true, and that Debtors could be considered an ERISA fiduciary in this case, it appears that any such action pursued as a fiduciary of the plan must be pursued on behalf of the plan, not on behalf of Debtors. *See* 29 U.S.C. § 1132(a)(2); 29 U.S.C. § 1109 (stating that a breach of ERISA fiduciary duties exposes the fiduciary to personal liability "to such plan"); *see also Pfahler v. Nat. Latex Products Co.*, 517 F.3d 816, 825 (6th Cir. 2007) (stating that "[b]ecause a § 502(a)(2) suit is a derivative action, a plaintiff bringing suit under this provision cannot obtain personal monetary relief, but must instead seek relief *for the plan*" (Emphasis added)). Much like a shareholder derivative claim on behalf of a corporation is a claim owned by the corporation, a claim asserted by an ERISA fiduciary on behalf of the ERISA plan is a claim owned by the ERISA plan. In any event, it is Appellant's contention that no ERISA claim arises the from the 2003 ESOP Transaction.

-11-

Cir. 2007).

The retention of certain ESOP Participant ERISA claims in this matter resembles

the situation presented in *In re Mercedes Homes, Inc.*, 431 B.R. 869. There, the

bankruptcy court addressed objections by ESOP participants to a plan of reorganization.

*Id.* at 873-74. Similar to what appears to have happened in this case, certain ESOP

participants resolved objections to a debtor corporation's proposed plan of reorganization

by agreeing to the addition of clarifying language that would:

> make it clear that the ESOP Participants are entitled to pursue claims and
> causes of action against the MHI ESOP and its fiduciaries. The Clarifying
> Language will permit the ESOP Participants to pursue any claims they may
> have against the Directors and Officers in their capacity as fiduciaries of the
> ESOP, but not in their capacity as Directors and Officers of the Debtors.

*Id.* at 873-74. Despite this clarifying language, other ESOP participants continued their

objection to the plan based on the apparent contention that they also possessed "direct

claims against the Directors and Officers for breach of fiduciary duty and other

unspecified negligent acts, and that such claims could be brought as a shareholder

derivative action." *Id.* at 875.

In addressing this further objection, the bankruptcy court concluded that, as a

matter of law, any purported state law shareholder derivative claim became the property

of the debtors' estate upon the filing of the bankruptcy petition. *Id.* at 876-78. Therefore,

the individual ESOP participants were unable to assert such claims as a matter of law

following filing of the bankruptcy petition. *Id*. at 877.[9] Despite the inability to assert

shareholder derivative claims on behalf of the debtor corporations, the bankruptcy court

determined that the ESOP Participants retained an opportunity for a recovery,

specifically, against "current or former trustees of the ESOP" and "other fiduciaries of the

ESOP[.]" *Id*. at 883.

Here, the clarifying language in the Confirmation Order stated that ESOP

Participants retained "any and all claims, causes of action or rights" except those that

could have been "asserted derivatively *by, through, or on behalf of the Debtors or their

Estates*." (Emphasis added). Because ERISA claims asserted under sections 1132(a)(2)

and 1109 of Title 29 are pursued on behalf of the ERISA plan (not the employer/debtor

corporation), such claims were apparently retained by the ESOP Participants and not

transferred to the Litigation Trust.[10]

Following the confirmation of the Plan, the Fish Plaintiffs filed an action in the

Illinois District Court purportedly asserting claims under § 1132(a)(2) and § 1109 on

behalf of the ESOP arising from the 2003 ESOP Transaction. (Doc. 1-53). In that action,

---

[9] The bankruptcy court in that case also concluded that: "[b]ecause any state law claims the Objection ESOP Participants might assert derive from their status as participants in the MHI ESOP, such claims are highly likely to 'relate to any employee benefit plan' and be preempted by ERISA." *Id*. at 875-76.

[10] In Appellant's Reply Brief (Doc. 16), Appellant attached a Stipulation entered in the District Court in Illinois. In that Stipulation, the parties to the Fish Litigation agreed to structure the action to bind all ESOP Participants, but also agreed that Fed. R. Civ. P. 23.1 would govern the action in all respects except for the pleading requirements set forth in that Rule. The parties also agreed that the Stipulation "shall not constitute an acknowledgement [sic] by any party that this is a derivative action brought on behalf of The Antioch Company." Appellant briefly pointed to the Stipulation in the Reply Brief in an attempt to somehow prove that the Fish Plaintiffs are asserting Litigation Claims. The Fish Plaintiffs moved to strike (Doc. 17) the Stipulation and any argument regarding the Stipulation, or in the alternative, leave to file a sur-reply. The Court **DENIES** the Motion to Strike, but has considered the Sur-Reply (Doc. 17-1), and therefore **GRANTS** the leave requested by the Fish Plaintiffs. The Sur-Reply shall be considered effectively and appropriately filed as of August 19, 2010. In any event, the Court agrees with the Fish Plaintiffs that the Stipulation is not evidence that the Fish Plaintiffs assert derivative actions as shareholders on behalf of the Debtors or their Estates.

-13-

the Fish Plaintiffs allege that the Fish Defendants were ERISA fiduciaries and breached

duties owed to the ESOP. (*Id.*) In the Brief on appeal, Appellant acknowledges that the

face of the pleadings in the Illinois District Court assert such claims. (Doc. 5) (stating

that "the Fish Plaintiffs allege that, as a result of the 2003 ESOP transaction, the Fish

Litigation Defendants breached their fiduciary duties to the ESOP under Section 404 of

ERISA and the Defendants caused a prohibited transaction under Section 406 of

ERISA").

Despite all of the foregoing, in conclusory fashion, Appellant argues that the Fish

Plaintiffs assert a state-law shareholder derivative action under the cloak of an ERISA

action. Yet, Appellant's only attempt at illustrating such a guise is an assertion that no

ERISA cause of action on behalf of the ESOP arose from the 2003 ESOP Transaction.

Appellant's primary argument in this regard contends that "[b]ecause the ESOP was not a

party to the 2003 ESOP Transaction . . . and [therefore, the ESOP] could not be harmed

by the transaction." (Doc. 5, 1-53). Specifically, Appellant argues that:

> the actions of which they [the Fish Plaintiffs] are complaining in the Fish
> Litigation arise out of a transaction to which they were not a party. To the
> extent that the ESOP was harmed by the 2003 ESOP Transaction, it was
> harmed indirectly, by the decrease in the value of the shares of the Debtors
> held by the ESOP . . . [I]t was the Debtors that were directly harmed by that
> transaction, not the ESOP. Any harm to the ESOP was derivative of the
> harm to the Debtors – by weakening the Debtors, the transaction eventually
> reduced the value of the ESOP assets and ultimately led the Debtors to seek
> bankruptcy protection.

(Doc. 1-59).

The Fish Plaintiffs counter Appellant's contention, arguing:

-14-

> The 2003 Transaction was conditioned upon the ESOP Trustee declining to
> tender Antioch shares in the Tender Offer. Since approval of the 2003
> Transaction was conditioned upon an act of the Trustee which would result
> in the ESOP owning 100% of Antioch's shares, the ESOP Trustee
> effectively had the power to approve or reject the 2003 Transaction.

(Doc. 1-57). The Fish Plaintiffs conclude that "the 2003 Transaction was structured as an

indirect sale of control of Antioch stock to the ESOP, over which the ESOP had absolute

power to kill the deal by tendering its shares to the Company," and, therefore, the 2003

ESOP Transaction "was a prohibited transaction between a plan and parties in interest or

fiduciaries pursuant to 29 U.S.C. § 1106." (*Id.*)

In light of the foregoing, the Court concludes that the central issue presented by

Appellant's Motion to Enforce is whether an ERISA cause of action on behalf of the

ESOP arose from the 2003 ESOP Transaction. If no viable ERISA claims arose from the

2003 ESOP Transaction, the Court fails to see why a judgment would not simply be

entered against the Fish Plaintiffs on those purported ERISA claims, or why such

purported ERISA claims would not be dismissed. *See Canale v. Yegen*, 782 F. Supp. 963,

967 (D.N.J. 1992) (dismissing certain purported ERISA claims "as failing to state a claim

cognizable under ERISA"). Further, if no viable ERISA claims arose from the 2003

ESOP Transaction, the Court fails to see why the Fish Plaintiffs' purported ERISA claims

must necessarily be considered as state-law shareholder derivative claims. Appellant

offers no guidance in this regard.

Accordingly, in the view of this Court, Appellant's characterization of the Motion

to Enforce as a property dispute over ownership of the Fish Litigation claims is

misguided. The true essence of the Motion challenges whether ERISA claims on behalf of the ESOP arose as a result of the 2003 ESOP Transaction.

**B.    Whether the Bankruptcy Court Has Exclusive Jurisdiction Over The Contested Matter.**

Having characterized the true nature of the dispute presented by the Motion to Enforce, the Court considers Appellant's argument that the Bankruptcy Court has exclusive jurisdiction decide this matter. Pursuant to § 1334(e), "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction . . . of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate[.]" Courts construe the reach of § 1334(e) narrowly and find "as its purpose the direction of the administration of a debtor's assets to one court." *In re Bay Vista of Virginia, Inc.*, 394 B.R. 820, 829 (E.D.Va. 2008).

Section 1334(e) provides the Bankruptcy Court "exclusive jurisdiction for resolving *in rem* claims against estate property." *In re Noletto*, 244 B.R. 845, 853 (S.D. Ala. 2000). An *in rem* proceeding is an action "under which an obligation is to be enforced against a thing, or item of property, regardless of the persons involved." *Id*. at 853 n6. To that end, § 1334(e):

> was intended to eliminate jurisdictional disputes arising from the equity principle that makes in rem jurisdiction over an item of property exclusive in the first court to assert such jurisdiction over it. E.g., *In re Washington*, 623 F.2d 1169 (6th Cir.1980). A creditor might file a lien against property of the debtor in a court in State A, and shortly afterward the debtor might declare bankruptcy in State B. Control over the debtor's property would be shared by the court in A and the bankruptcy court in B - it might even be the same piece of property, and more than two states might be involved.

-16-

> Section 1334(d) [now § 1334(e)] gives the bankruptcy court control of all
> the property. Creditors who want to enforce their liens have to do so in that
> court regardless of the location of the creditor or the property. This is the
> entire meaning of the statute[.]

*In re U.S. Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997).

This matter does not involve any claim seeking to enforce an obligation against the

property of the Debtors or their Estates. And, again, the Court is not persuaded by

Appellant's attempt to characterize the Motion to Enforce as presenting a dispute over

what claims constitute Litigation Claims. The nature of the dispute does not truly argue

that claims asserted in the Fish Litigation are actually Litigation Claims, but, instead,

argues that no ERISA claims arose from the facts alleged in the Complaint. Thus, the

Court concludes that this matter is not one that falls within the exclusive jurisdiction of

the Bankruptcy Court pursuant to § 1334(e).[11]

Accordingly, Section § 1334(e) does not apply to give the Bankruptcy Court

exclusive jurisdiction to decide the issues as presented in Appellant's Motion to Enforce.

(Doc. 1-53).

## C.     Whether the Bankruptcy Court Abused its Discretion in Abstaining From Determining Appellant's Motion.

Appellant contends that the Bankruptcy Court violated 28 U.S.C. §1334(c)(1), and

---

[11] The cases cited by Appellant in support of the position that § 1334(e) applies are largely inapplicable here. Appellant quotes language from the case of *In re RNI Wind Down*, 348 B.R. 286. In that case, the court discussed whether it had jurisdiction to amend a settlement agreement previously reached in an action that indisputably asserted shareholder derivative claims against corporate officers and directors on behalf of a corporate debtor. *In re RNI Wind Down*, 348 B.R. at 290. In fact, a settlement reached in the shareholder derivative action required a payment of $11 million to the corporate debtor. *Id.* Essentially, the court determined that it had exclusive jurisdiction under § 1334(e) to amend the settlement agreement because the settlement required the payment of $11 million to the *debtor*, and, therefore, was property of the debtor's estate. *Id* at 291-294.

abused its discretion in permissively abstaining from deciding Appellant's Motion to Enforce. Under § 1334(c)(1), "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

The language in § 1334(c)(1) allowing abstention "in the interest of justice, allows abstention by a bankruptcy court "in favor of another Federal court[.]" *In re Lear Corp.*, No. 09-01441, 2009 WL 3191369 (S.D.N.Y. Sept. 24, 2009) (citing *In re Apex Oil Co.*, 980 F.2d 1150 (9th Cir. 1992)); *see also In re Repurchase Corp.*, 329 B.R. 832, 835 (stating that "the plain language of the statute permits a district court, and a bankruptcy court if so delegated under 28 U.S.C. § 157(a), to abstain from exercising its jurisdiction to adjudicate a core or noncore matter 'in the interest of justice' if abstention lies in favor of another federal court"). However, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *McDaniel*, 364 B.R. at 649.

In determining whether to permissively abstain under § 1334(c)(1), a court must consider a number of factors, including:

1.  the effect or lack of effect on the efficient administration of the estate if a court abstains;

2.  the extent to which state law issues predominate over bankruptcy issues;

3.  the difficulty or unsettled nature of the applicable state law;

4.     the presence of a related proceeding commenced in state court or other non-bankruptcy court;

5.     the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

6.     the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

7.     the substance rather than form of an asserted core proceeding;

8.     the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

9.     the burden of this court's docket;

10.    the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

11.    the existence of a right to a jury trial;

12.    the presence in the proceeding of non-debtor parties; and

13.    any unusual or other significant factors.

*Id.* at 650. "The relevance and importance of each of these factors will vary with the particular circumstances of each case and no one factor is necessarily determinative." *Id.*

Here, in determining that abstention was appropriate, the Bankruptcy Court first found that abstention "will not detrimentally impact the administration of the Antioch bankruptcy estates." (Doc. 1-65). Appellant contends that the Bankruptcy Court abused its discretion in this regard, arguing that if the Fish Plaintiffs obtain a judgment in the Fish Litigation and ultimately collect on that judgment, the assets of the Fish Litigation Defendants would be so depleted that Appellant would be unable to collect on any

judgment ultimately obtained by the Litigation Trust on Litigation Claims. Such a

contention is entirely speculative at this point because it assumes the viability of all of the

purported claims and the uncollectibility of potential judgment debtors (or their insurers,

if any).

Further, it must be noted that Appellant has asserted an adversary action in the

Bankruptcy Court advancing the purported Litigation Claims on behalf of the Litigation

Trust. *See In re The Antioch Co.*, 2010 WL 3440856 at *1.[12]   In that action, Appellant

"asserts the following non-bankruptcy causes of action: breach of fiduciary duty, aiding

and abetting breach of fiduciary duty, professional negligence and tortious interference

with business contracts" which "concern events surrounding the ESOP transaction and

the ESOP." *Id.*   Consideration of the merits of this matter could possibly impact the

pending adversary proceeding because the interplay of state breach of fiduciary duty

causes of action and ERISA has been placed directly at issue in that action. *See In re The*

*Antioch Co.*, 2010 WL 3440856, at *3 (stating that certain parties have moved to dismiss

claims arguing that "state law causes of action are preempted by ERISA").

While the adversary action was not filed until after the Abstention Order, the

Bankruptcy Court anticipated the filing of such action by noting that it would not abstain

from deciding "Litigation Claims" filed in that Court by Appellant. (Doc. 1-65).

Therefore, the potential, and perhaps likelihood, of that adversary action was considered

---

[12] "Federal courts may take judicial notice of proceedings in other courts of record." *Rodic v. Thistledown Racig Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) (citing *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969), cert. denied, 397 U.S. 1065 (1970)).

in the Bankruptcy Court's decision to abstain.[13] The adversary action may involve much

of the state law and ERISA law analysis that would necessarily be involved in

determining Appellant's Motion to Enforce. The Court sees no need to muddy the waters

further by requiring the Bankruptcy Court to consider the Motion to Enforce when it

involves issues at least tangentially involved in two other related actions, one already

pending before it. This factor weighs heavily in favor of abstention.

The Bankruptcy Court also determined that abstention was appropriate based on its

"heavy docket" and the Illinois District Court's "desire to address these issues[.]" (*Id.*)

Appellant contends that the Bankruptcy Court's reliance on its heavy docket as a factor in

favor of abstention was error, citing *McDaniel*, 364 B.R. at 655. However, in *McDaniel*,

the bankruptcy court's heavy docket was the only factor favoring abstention, and all other

factors heavily favored non-abstention. *Id.* Here, other factors weigh heavily in favor of

abstention, and, therefore, the Bankruptcy Court's consideration of its docket was not an

abuse of discretion.

Next, the Bankruptcy Court concluded that the matters presented by Appellant

were "not in the nature of core maters that are intrinsically entwined with the

administration of the estates" and that ERISA issues predominated over any bankruptcy

issue. (*Id.*) The Bankruptcy Court did not abuse its discretion in concluding that non-

---

[13] The Court believes that consideration of the potential, and now pending, adversary action is properly considered under a couple of the factors listed in *McDaniel*, 364 B.R. 649. While the adversary action is not a "related state court proceeding," it is nonetheless a "related proceeding" arising from the same transaction and potentially involving the same issues. Further, the potential, and now pending, related adversary action advancing the "Litigation Claims" could be properly considered under the "unusual or significant" catch-all factor.

-21-

bankruptcy law predominates this matter. As set forth above, while the interpretation and construction of the Confirmation Order and Plan may play a part, a determination of Appellant's Motion to Enforce mostly requires the analysis and interpretation of state corporations law, interpretation of ERISA, and the interplay between those laws based on the facts of this case.

Further, the Bankruptcy Court noted that the action in Illinois was not in its "infancy" and that, as the result of "numerous filings" in that case, the Illinois court was familiar with the case. (*Id.*) The Bankruptcy Court also noted that "the other parties necessary to deciding the Contested Matter are already before the [Illinois] District Court" and that Appellant intervening in that case was not a significant burden. (*Id.*)

The presence of non-debtor parties to this action is significant and also weighs heavily in favor of abstention. The Court sees no significant reason why the Fish Plaintiffs must necessarily be required to defend the merits of their purported ERISA causes of action in two separate Courts. While Appellant argues that the Bankruptcy Court underestimated the burden placed upon the Litigation Trust in litigating in Illinois, the Court is not convinced that litigating in Illinois imposes so much of a burden that it outweighs all other factors in favor of abstention. Accordingly, the Bankruptcy Court did not abuse its discretion in this regard.

Finally, the Bankruptcy Court also considered the "principle of comity" and determined that it supported abstention. (*Id.*) Appellant contends that consideration of the principle of comity was erroneous because the statute allows abstention in favor of

-22-

another federal court only on in the "interests of justice."  Such argument has no merit.
Appellant's reliance upon *In re Apex Oil Co.*, 980 F.2d 1150, 1153 (8t Cir. 1992), is
misguided because, with regard to § 1334(c)(1), that case simply holds that "[t]he
language of the statute clearly is not limited to state-law cases[.]"

Contrary to Appellant's contention, "[n]otions of comity which are the
underpinnings of permissive abstention in favor of a state court have no less force when
the other forum is another federal court." *In re Morris*, Nos. 96-16436DWS, 97-0431,
96-18367DWS, 97-0685, 1998 WL 151426, at *6 (E.D. Pa. Mar. 10, 1998); *see also In re
Repurchase Corp.*, 329 B.R. at 836-837 (finding that "[a]nother factor that weighs heavily
in favor of abstention is the principle of federal comity" which requires "federal district
courts to refrain from interfering in each other's affairs").   Accordingly, the Bankruptcy
Court did not abuse its discretion in considering the principle of comity in determining
whether to abstain from deciding the Motion to Enforce, and it did not abuse its discretion
in its reasoning under that principle.

-23-

## IV.  CONCLUSION

Accordingly, the Bankruptcy Court did not abuse of discretion in abstaining from determining Appellant's Motion to Enforce.  Therefore, based on all of the foregoing, the Court Orders that: (1) the Bankruptcy Court's Order (Docs. 1-65, 1-66) is **AFFIRMED**; (2) Appellees' Motion to Strike (Doc. 17) is **DENIED**; (3) Appellees' Motion for Leave to File a Sur-Reply is **GRANTED**, and Appellees' Sur-Reply is deemed appropriately filed; (4) Appellant's Request for Sanctions is **DENIED**[14]; and (5) this case is closed.

**IT IS SO ORDERED.**

Date: __10/14/10__

Timothy S. Black
United States District Judge

_____

[14]  Appellant again requests the Court to impose sanctions upon Appellees as a result of the filing of the Motion to Strike and alternative request to file a Sur-Reply.  The Court finds that the imposition of sanction is again unwarranted.  The Motion to Strike did not unreasonably or vexatiously multiply the proceedings.  Further, while the Court denies the Motion to Strike, the Court finds that the Motion was filed in good-faith and that good cause supported the request to file a Sur-Reply to address Appellant's vague reliance on the Stipulation to support Appellant's position.